Tom Allen, Chair Homes Inspector Advisory Board c/o Secretary, Homes Inspector Advisory Board 47 Jamestown Drive Searcy, AR 72143
Dear Mr. Allen:
I am writing in response to your request for my opinion regarding the possible authority of the Home Inspector Advisory Board (the "Board") to require applicants for registration as home inspectors to submit for review inspection reports they have produced in the past. In support of your request, you have offered the following summary of pertinent information:
1. References: Arkansas Statute excerpts:
 a. § 17-52-104: ". . . All applications for registration to the office of the secretary of State shall be reviewed by the Homes Inspector Advisory Board prior to registration. The board shall review the applications . . ."
 b. § 17-52-103(a)(3)(B): "(B) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year under the direct supervision of a registered home inspector, and completion of one hundred (100) home inspections for compensation."
 c. § 17-52-103(a)(3)(D): "(D) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year, completion of at least twenty (20) home inspections for compensation, and successful completion of at least ninety (90) core hours of a real estate inspection education program."
 d. § 17-52-202(c): "All home inspections conducted by persons registered under this chapter shall be conducted in adherence to the Standards of Practice and Code of Ethics of the American Society of Home Inspectors, the Arkansas Association of Real Estate Inspectors, or equivalent professional home inspection association. Copies of these standards shall be on deposit with the Secretary of State.
2. Background information:
 a. Reference 1.a above gives no details regarding what the required review should entail. In fact, § 17-52-107, which pertains to the Board, does not address the reviews. The Board has taken reference 1.a to mean that the Board should review registration applications to insure that each applicant meets the professional qualifications [§ 17-52-103(a)(3)] [brackets yours] which is [sic] being used as the basis for his/her registration. Further, when registrations were to be based on references 1.c or 1.d above, the Board has, from time to time requested an applicant provide copies of reports of inspections. Those reports were randomly selected by the Board from the list of inspections provided by the applicant. The logic being that since inspections are required by the statute and reports prepared in accordance with the standards specified in the statute (reference 1.c above), the reports would provide at least some indication of the applicant's ability/qualifications to conduct such inspections. Conversely, the Board normally does not request reports for applications based on § 17-52-103(a)(3)(A) because those professional organizations exercise oversight of their members' qualifications and reporting.
 b. Whenever reports are requested, the applicant is advised that after the reports are reviewed, at his/her choice, the reports will be returned (if postage paid envelopes are provided by the applicant) or destroyed by the Board. This has been done because the Board has felt reports should not become part of the applicant's registration file, which is a public record. Placing their reports in a public record could place the applicant at an unnecessary, competitive disadvantage.
 c. Following review of the reports, the Board makes a recommendation to the Secretary of State regarding whether the applicant meets the professional qualifications upon which the registration application is based.
 d. In a recent case, an applicant was seeking the register under § 17-52-103(a)(3)(B) (reference 1.b above). The Board requested submission of copies of three reports for review. The applicant declined to do so, stating ". . . It is against client privileges to make public any information about an inspection report." The applicant further stated that he had been advised that ". . . not only is it against client privileges to make individual inspection reports public, but it is against the law."
3. Request that a legal opinion be provided regarding the following:
 a. Are the logic and actions described in paragraph 2.a through 2.c above reasonable and appropriate?
 b. Is it against "client privileges" or is there any law which would prohibit an applicant from supplying copies of inspection reports for review by the Board? The codes of ethics noted in reference 1.d above state: "The member will not disclose any information concerning the results of the inspection without the approval of the clients or their representatives." It would seem that an applicant could make reasonable effort to obtain a client's approval to provide a copy of their report to the Board for the purpose of reviewing the adequacy of the inspection and the report. Aside from this restriction, the Board is unaware of any prohibition to an inspector being able to provide copies of their reports. Certainly, the Board respects not allowing access to those reports outside the review process.
 c. If there are no prohibitions other than in the codes of ethics, would it be reasonable and appropriate for the Board to withhold a recommendation that an applicant not [sic] be registered based on the applicant refusing/failing to provide requested reports for review?
For purposes of clarity in my consideration of these three questions, I will paraphrase your first question as follows:
 Is it consistent with the Board's enabling legislation for the Board to require an applicant for registration to supply for review copies of inspection reports the applicant has conducted in the past?
RESPONSE
In my opinion, the answer to your first question is "no." Nothing in the Arkansas Home Inspectors Registration Act (the "Act"), A.C.A. § 17-52-101et seq. (Supp. 2001) authorizes the Board to establish anything more than the fact of inspections. With respect to your second question, no Arkansas law expressly requires an applicant, as opposed to a registered inspector, to observe the referenced ethical codes. However, I believe that a registered inspector who supervised an applicant pursuant to A.C.A. § 17-52-103(a)(3)(B) would be obligated pursuant to A.C.A. § 17-52-202(c) to maintain the confidentiality of inspection reports produced by the applicant under his supervision. Moreover, a candidate who conducted inspections out-of-state and who seeks registration pursuant to A.C.A. § 17-52-103(a)(3)(D) may be precluded from disclosing reports by that other state's laws. In addition, an applicant might be precluded from disclosing inspection reports by the ethical standards of some professional organization to which he belongs or by the terms of the contract with his client. With respect to your third question, I do not believe it would be reasonable or appropriate for the Board to withhold a recommendation that a candidate be registered simply because the candidate observed an applicable ethical proscription.
Question 1: Is it consistent with the Board's enabling legislation forthe Board to require an applicant for registration to supply for reviewcopies of inspection reports the applicant has conducted in the past?
As noted in your request, A.C.A. § 17-52-104(b) provides in pertinent part: "All applications for registration to the office of the Secretary of State shall be reviewed by the Homes Inspector Advisory Board prior to registration." In my opinion, the scope of the referenced review is limited to determining whether a candidate has met the requirements for registration set forth at A.C.A. § 17-52-103, which include the following:
 (a)(3) Evidence of one (1) of the following professional qualifications:
 (A) Membership or candidacy in, and adherence to the Standards of Practice and Code of Ethics of the American Society of Home Inspectors, Inc. (ASHI), the Arkansas Association of Real Estate Inspectors (AAREI), or an equivalent professional home inspection association. Persons in candidate status must provide evidence of having successfully completed the respective professional association's certification examination.
 (B) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year under the direct supervision of a registered home inspector, and completion of one hundred (100) home inspections for compensation.
 (C) Current professional registration in Arkansas as an architect, architectural engineer, mechanical engineer, or structural engineer.
 (D) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year, completion of at least twenty (20) home inspections for compensation, and successful completion of at least ninety (90) core hours of a real estate inspection education program.
In interpreting this statute, or any statute, I must construe the language just as it reads, "giving the words their ordinary and usually accepted meaning in common language." Brimer v. Arkansas ContractorsLicensing Board, 312 Ark. 401, 405, 849 S.W.2d 948 (1993). Significantly, with respect to the requirement of past experience, subsections (a)(3)(B) and (a)(3)(D) of this statute merely dictate that the applicant have completed a specified number of "home inspections for compensation," not that these inspections reflect any particular level of professional competence. Cf A.C.A. § 17-52-202 (providing that registered
inspectors must meet a specified standard of performance). While I appreciate the Board's interest in reviewing applicants' past performance, I cannot opine that the legislature has granted the Board any authority to do so. I am reinforced in this conclusion by the provisions of A.C.A. § 17-52-107, which assigns the Board only the following powers:
(b) The board shall:
 (1) Decide the subject content and standards which will be acceptable to meet the educational standards with regard to home inspection courses as required by law; and
 (2) Develop and put into place procedures for processing and resolution of any and all complaints against and by home inspectors practicing in this state.
As I advised you in Ark. Op. Att'y Gen. No. 2001-216, subsection (b)(1) of this statute affords the Board considerable discretion in determining what will constitute an acceptable "real estate inspection education program" under A.C.A. § 17-52-103(a)(3)(D). However, nothing in A.C.A. § 17-52-107 suggests that the Board has discretion to inquire into the quality, as opposed to the number, of home inspections referenced in A.C.A. §§ 17-52-103(a)(3)(B) and (D). Accordingly, I believe the Board would be authorized to review an applicant's past inspection reports for quality only if the legislature were persuaded to authorize such review by amending the Act.
Question 2: Is it against "client privileges" or is there any law whichwould prohibit an applicant from supplying copies of inspection reportsfor review by the Board?
"Client privileges" can obviously arise either by statute, by industry ethical standards or by express agreement between an inspector and a client. Subsection 17-52-202(c) of the Code provides in pertinent part:
 All home inspections conducted by persons registered under this chapter shall be conducted in adherence to the Standards of Practice and Code of Ethics of the American Society of Home Inspectors, the Arkansas Association of Real Estate Inspectors, or equivalent professional home inspection association.
(Emphasis added.) As reflected in the highlighted term, Arkansas law obliges only registered home inspectors, as opposed to applicants for registration, to observe industry ethical standards, which you report include keeping inspection reports confidential unless the client agrees to disclosure. This distinction may well reflect the fact that all home inspections in Arkansas, with the exception of those conducted by the extremely narrow category of exempt persons listed at A.C.A. § 17-52-204, will apparently be either conducted by or conducted under the direct supervision of registered inspectors ultimately responsible for ensuring the observance of ethical standards. See A.C.A. §§ 17-52-202 and 17-52-103(a)(3)(B).[1] Moreover, as noted above, an out-of-state inspector seeking registration may be subject to proscriptions against disclosure under the other state's law. Finally, any candidate for registration may be precluded from disclosing inspection reports by the ethical standards of any professional organization to which he belongs or by the express terms of the contract with his client.
Question 3: If there are no prohibitions other than in the codes ofethics, would it be reasonable and appropriate for the Board to withholda recommendation that an applicant not be registered based on theapplicant refusing/failing to provide requested reports for review?
As reflected in my response to your first question, I believe the Board lacks the statutory authority to demand that applicants produce past inspection reports for review. However, even assuming the Board had been granted a degree of discretion that might include selectively reviewing the caliber of past performance — an assumption I will indulge purely for the sake of argument — I nevertheless believe it would be improper to exercise that discretion in a manner that would obligate an applicant to breach professional ethics by producing confidential documents without permission. In my opinion, it would be doubly inappropriate to recommend that an applicant not be registered merely for resisting such a demand.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] I appreciate that A.C.A. § 17-52-103(a)(3)(D) refers to "home inspections for compensation" without mandating that these be supervised by a registered inspector. However, given that it is a crime to independently inspect homes without first obtaining a registration, A.C.A. § 17-52-202(a), I can only conclude that the inspections referenced in A.C.A. § 17-52-103(a)(3)(D) must have been conducted either before enactment of the Act or in another state.